Donte Bibbs #23704-055
McKean FCI
P. O. Box 8000
Bradford, PA 16701
Plaintiff - Pro Se

IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DONTE BIBBS,

    Plaintiff,

v.

COLLETTE PETERS,

    Defendant 1,

B. WEST,

    Defendant 2,

R. LASCO,

    Defendant 3.

CASE NO.

Case: 1:24−cv−02050
Assigned To : Unassigned
Assign. Date : 5/24/2024
Description: Pro Se Gen. Civ. (F−DECK)

CIVIL COMPLAINT

I.   NATURE OF COMPLAINT

Plaintiff Donte Bibbs, pro se, hereby submits this civil complaint under Bivens v. Six Unknown Federal Narcotics Agents, 403 US 388 (1971), (a Bivens action seeks to hold federal officers individually liable for constitutional violations), against Defendant(s) Collette Peters, B. West, and R. Lasco, and alleges the following constitutional violations.

II.   JURISDICTION

The United States District Court for the District of Columbia has jurisdiction over this matter under 28 U.S.C. 1332 where diversity exists between the plaintiff and defendant(s). Sinatra v. National Enquirer Inc.,854 F.2d 1191 (1988), Calder v. Jones, 104 S.Ct. 1480 (1984). Venue is proper under 28 U.S.C. 1391(b)(1). This civil action is timely under 28 U.S.C. 1658. Merck v. Reynolds, 559 US 633 (2010).

III.   PARTIES TO ACTION

A.   Plaintiff - Donte Bibbs, an individual who resides outside this district in Bradford, Pennsylvania.

B.   Defendant 1 - Collette Peters, an individual who resides inside this district in Washington, D. C.

C.   Defendant 2 - B. West, an individual who resides outside this district in Bradford, Pennsylvania

D.   Defendant 3 - Lasco, an individual who resides outside this district in Bradford, Pennsylvania.

IV.    STATEMENT OF FACTS

Plaintiff Bibbs was serving a one year and one day, (366 day) federal term of imprisonment for illegal gun possession at the Federal Bureau of Prisons, (FBOP) McKean unit in Bradford, Pennsylvania he was assigned to CA housing unit. McKean is sectioned into four separate housing units, each unit called A unit, B unit, C unit, and D unit. The individual housing units are sectioned into two separate housing units, each unit called AA unit and AB unit, BA unit and BB unit, CA unit and CB unit, and DA unit and DB unit. The housing units are staffed with officers who are assigned by shift to patrol the individual housing units. On April 23, 2022, at approximately 0835 hours Officer Boyer was assigned to CA housing unit, Defendant 2 - B. West was assigned to CB housing unit, Defendant 3 - R. Lasco was off duty, and McKean unit was on lockdown status. Bibbs was assigned as an orderly who completed daily housekeeping tasks as directed by the unit officer who frequently open the cell door during lockdown periods. While Bibbs was in his cell reading a book, West and Lasco opened the cell door and engaged in an exchange of words attempting to provoke an incident of hostility. West and Lasco told Bibbs he looked like "Gumbo Shrimp," a black character in the Forest Gump movie, then Bibbs, who was scheduled for release on April 28, 2022 was asked "aren't you going home soon?" to which he replied yes, that is correct, then West and Lasco threatened him telling him "not if I can help it." West and Lasco then requested Bibbs COVID vaccination status, informing him that the nurse needed COVID nasal swab to which Bibbs replied was current and that he had been properly vaccinated. West and Lasco responded to Bibbs calling him "retarded," to which Bibbs replied calling West and Lasco "incest babies" causing West to enter the cell and physically attack Bibbs. West used a choke hold maneuver on Bibbs to restrain his movements, using a closed fist to strike Bibbs in the head and face at least five times causing him to become disoriented and lose consciousness Once Bibbs was disabled, West deployed pepper spray and exited the cell, locking Bibbs in the cell.

According to West's FBOP Incident Report, Report Number: 3620965, (see Exhibit A) on 04/23/2022 at approximately 0835 I was assisting the CA unit officer with the daily operation of CA when I approached inmate Bibbs, Donte #23704-055 in C01-103 to ask him about his vaccination status. While questioning inmate Bibbs about his status he quickly became irate swinging his hands threatening me while stating "I'll slap you, incest looking bitch." I then gave a direct order for inmate Bibbs to place his hands on the locker. He abruptly refused throwing his arm at my face. I then attempted to control inmate Bibbs arm so that he could not attempt to strike me again, when he turned pushed himself into me wrapped his arms around me bear hugging me. Inmate Bibbs picked me up off the ground in an attempt to throw me on the ground. I then hit my body alarm while resisting the inmate's attempts to throw me on the ground. I was eventually able to free myself from the grasp of inmate Bibs and retreat out of the cell while deploying OC to hinder his attempts to reengage me. Inmate Bibbs was

charged with: (1) 224 - Assulting W/O Serious Injury, (2) 203 - Threatening Bodily Harm, and (3) 307 - Refusing To Obey An Order. Inmate Bibbs was transported to McKean Special Housing Unit, (SHU) pending an investigation.

The McKean Disciplinary Officer conducted an investigation with the assistance of Lt. Bova who was able to obtain video surveillance of the incident to determine whether Bibbs was accountable for the incident as reported by West and Lasco. Upon viewing the surveillance footage it was determined that Bibbs was not the cause of the incident and the disciplinary action against him was expunged issuing no sanction. It is unknown at this time what West's employment status is with the FBOP, but it is known he has either been separated from the FBOP or reassigned to another unit due to the volume and severity of inmate excessive force complaints filed against him. Lasco is still assigned to FBOP McKean unit.

Bibbs was scheduled for release on April 28, 2022, but due to the incident West and Lasco fabricated on April 23, 2022 Bibbs' release was delayed until May 31, 2022. Bibbs complains he suffered life threatening injuries resulting in permanent paralysis at the hands of West and Lasco. Initially minor cut and scrapes were reported, but since the April 23, 2022 attack Bibbs complains about blurry vision and ringing in his ears. When Bibbs released from the FBOP on May 31, 2022 his family noticed a slowness or partial loss of body movement diagnosed as partial paralysis. Bibbs was examined by a family physician who noted paralysis and slurred motor skills caused by a frontal lobe and cerebral cortex brain injury with severe hematoma sustained when he was assulted on April 23, 2022 by West and Lasco.

V. LEGAL CLAIMS

The foregoing allegations sufficiently meet the standard promulgated under Rule 8 of the Federal Rules of Civil Procedure to state a claim for relief for which relief may be granted. The text of Rule 8(a), has not changed since the enactment in 1938. In relevant part, it provides: (a) Claim for Relief. A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for relief. Rule 8(a)(1)(2)(3), Fed. R. Civ. P.

A. COUNT ONE - EXCESSIVE FORCE

When analyzing Eighth Amendment claims that allege excessive force, courts consider: (1) the objective severity of the inmate's injury, and (2) the subjective culpability of the official. Hudson v. McMillian, 503 US 1, 8 (1992), see also Wilkins v. Gaddy, 559 US 34, 37-38 (2010), Whitley v. Albers, 475 US 312, 319 (1986), abrogated on other grounds by Wilkens v. Gaddy, 559 US 34 (2010), see Hogan v. Fischer, 738 F.3d 509, 515-516 (2nd Cir. 2013), (excessive force when prison officials sprayed inmates with feces, vinegar, and machine oil where actions indicated malicious behavior, not a good faith effort to maintain order), Giles v. Kearney, 571 F.3d 318, 327 (3rd Cir. 2009), excessive force when prisoner stopped resisting, but

guards continued to beat him), Iko v. Shreve, 535 F.3d 225, 239-240 (4th Cir. 2008), (excessive force when officer deployed pepper spray in inmate's cell after inmate complied with orders, no attempt to lesson the effects of spray after inmate was restrained, failed to seek medical treatment for inmate who later died), Brown v. Lippard, 472 F.3d 384, 387 (5th Cir. 2006), excessive force when guard allegedly acted in bad faith by striking inmate repeatedly over his back, head, and shoulders though witnesses described the inmate as acting cooperatively, presenting no threat to guards or fellow inmates), Roberson v. Torres, 770 F.3d 398, 406-407 (6th Cir. 2014), excessive force when officer sprayed gas into cell to wake sleeping inmate where less intrusive method was available), Hendrickson v. Cooper, 589 F.3d 887,891 (7th Cir. 2009), excessive force when prison guard attacked inmate after he insulted the guard), United States v. Miller, 477 F.3d 644, 647 (8th Cir. 2007), (excessive force when prison supervisor kicked, stomped, and punched restrained inmate where guards actions were unjustified and malicious), Clement v. Gomez, 298 F.3d 898, 904-905 (9th Cir. 2002), (Eighth Amendment claim states where inmate's exposure to pepper spray demonstrated  subjective and objective elements), Smith v. Cochran, 339 F.3d 1205, 1212-1213 (10th Cir. 2003). The objective element requires consideration of whether the wrongdoing was"harmful enough" to implicate the Eighth Amendment. This is a low bar, a prisoner need not prove that he or she has sustained significant injury. Wilkins, 559 US at 34, (prisoner need not suffer significant injury to show excessive force), Hudson, 503 US at 9, ("Otherwise the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."). The objective element can be satisfied by pain alone, in the absence if an "enduring injury." see Hudson, 503 US at 8-9, Hogan, 738 F.3d at 515-516 (2nd Cir. 2013), (objective element satisfied when prisoner suffered burns to eyes, a cut on neck, and reoccurring eye and skin problems after guards sprayed prisoner with mixture of vinegar, feces, and machine oil), Brooks v. Kyler, 204 F.3d 102, 109 (3rd Cir. 2000), (objective element satisfied though prisoner's superficial lacerations and abrasions were de minimus), Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996), (objective element satisfied when prisoner alleged officials sprayed him with mace during disturbance and confined him to 4-point restraint for eight hours where injury need not be serious or significant, only more than de minimus), Brown, 472 F.3d at 386-384, (5th Cir. 2006), (objective element satisfied when prison guard allegedly repeatedly struck inmate over his back, head, and shoulders where injuries were more than de minimus), Lewis v. Downey, 581 F.3d 467, 475 (7th Cir, 2009), (objective element satisfied when guard used taser on inmate failed to comply with guards command to get out of bed), Williams v. Jackson, 600 F.3d 1007, 1014 (8th Cir. 2010), (objective element satisfied when prison guards removed radiation shield from ultraviolet lamp, exposing prisoner to radiation, though only visible injury was irritation of prisoner's eyes), Wood v. Beauclair, 692 F.3d 1041, 1050 (9th Cir. 2012), (objective element satisfied when guard repeatedly sexually harassed inmate though inmate suffered no

"specific psychological or physical harm" where the harassment was offensive to "human dignity"), United States v. LaVallee, 439 F.3d 670, 687-688 (10th Cir, 2006), (objective element satisfied though guards punches to prisoners' back and bloodying of prisoner's lip resulted in de minimus injuries), Chandler v. D. C. Department of Corrections, 145 F.3d 1355, 1360 (D.C. Cir. 1998), (objective element satisfied where official's threat against prisoner's life caused prisoner more than de minimus psychological harm).

The subjective element requires that the officials acted with a sufficiently culpable state of mind. Use of force by prison officials may constitute cruel and unusual punishment if the force amounts to "inflicted unnecessary and wanton pain," which depends on "whether force was applied in a good faith effort to maintain or restore discipline, or whether it was applied maliciously and sadistically for the sole purpose of causing harm." Hudson, 503 US at 6-7, (citing Whitley, 475 US at 320-321), see also Wilkins, 559 US at 134, (key element of excessive force inquiry is whether officials acted with culpable state of mind). In Hudson, prison guards struck the inmate in the face, chest, and abdomen while the inmate was in full restraint and being transferred to an administrative lockdown cell, causing minor bruises, a swollen face, and a broken dental plate. 503 US at 4. Whitley dealt specifically with the use of force to maintain or regain control of prisoners, and Hudson extended the application of Whitley to al claims of excessive force. see id. at 6-7. On remand the Fifth Circuit held that prison officials actions were unnecessary, wanton and applied maliciously and sadistically to cause harm. see Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992), see Crawford v. Cuomo, 796 F.3d 252, 258-259 (2nd Cir. 2015), (subjective element satisfied when prison guard squeezed and made comments about prisoner's genitals where unjustified search lacked legitimate duties), Young v. Martin, 801 F.3d 172, 180-182 (3rd Cir. 2015), (subjective element satisfied when inmate who posed no risk to himself or others was placed in restraint chair for 14 hours), Iko, 535 F.3d 239-240 (4th Cir. 2008), (subjective element satisfied when prison officials used pepper spray on prisoner despite docile behavior and apparent attempts to comply with orders), Brown, 472 F.3d at 387 (5th Cir. 2006), subjective element satisfied when prison guard allegedly struck inmate repeatedly over back, head, and shoulders where force not applied in good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause intentional harm), Roberson, 770 F.3d at 406-407 (6th Cir. 2014), (subjective element satisfied when sleeping prisoner sprayed with chemical agent where he failed to comply with guards orders and other methods of less harmful value available), Gomez v. Randal, 680 F.3d 859, 864 (7th Cir. 2012), (subjective element satisficed where corrections officers fired two rounds from shotgun at unarmed inmate after fight broke out where injured inmate was not involved and fight ceased without use of firearms), Wood, 692 F.3d at 1050 (9th Cir. 2012), (subjective element satisfied when guard sexually harassed inmate where guard acted without any

penological purpose), Mitchell v. Maynard, 80 F.3d 1433, 1440 (10th Cir. 1996), (subjective element satisfied when guards beat naked and shackled inmate who posed no disciplinary problem or threat to guards). Relevant factors for the subjective element include: (1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the threat to the safety of prison staff and other inmates as reasonably perceived by a responsible official, and (4) efforts by prison officials to temper the severity of a forceful response. see Hudson, 503 US at 7, (citing Whitley, 475 US at 321). However the use of force does not amount to cruel and unusual punishment simply where it appears, in retrospect, that the degree of force authorized or applied was unreasonable or unnecessary. see Whitley, 475 US at 319.

In the instant, Bibbs argues that his Eighth and Fourteenth Amendment rights were violated when the Defendant(s); West, and Lasco intentionally targeted him maliciously and sadistically to cause harm. When analyzing an excessive force claim, the plaintiff must demonstrate: (1) the objective severity of the inmate's injury, and (2) the subjective culpability of the official. Hudson, 503 US at 8, Wilkins, 559 US at 37-38, and Whitley, 475 US at 319. Bibbs is able to make a prima facie case by clear and convincing standards he sustained severe injuries at the hands of West and Lasco with the use of medical records and medical experts who will submit deposition evidence finding slowness or partial loss of body movement, diagnosed as partial paralysis caused by frontal lobe and cerebral cortex hematoma consistent with of the April 23, 2022 attack. Element two requires the plaintiff demonstrate subjective culpability of the defendant. Hudson, 503 US at 6-6, Whitley, 475 US at 320-321, and Wilkins, 559 US at 134. Bibbs argues that at no time has he threatened staff or presented a threat to staff, or for that matter any other inmate. Bibbs was assigned to the orderly work detail, this workgroup usually consists of trusted inmates who report directly to unit housing officers and remain unsupervised during lockdown periods to maintain and sanitize common areas of the housing unit. Bibbs has no disciplinary history and has never instigated or provoked an incident of aggression directed toward staff or another inmate, but West authored an incident report, (see Exhibit A) citing Bibbs for purported institutional violations which were unsupported by surveillance video, (see Exhibit B) and expunged after the FBOP Disciplinary Hearing Officer and FBOP SIS reviewed West and Lasco's reports. West also stated in supplemental reports that "Bibbs fractured his wrist when Bibbs struck West's fist with his face" which would indicate to a person of reasonable intelligence, West is not a person the FBOP should clothe with authority to act absent supervisory direction. On April 23, 2022 Officer Boyer was assigned to CA housing unit where Bibbs was housed, if West and Lasco had any legitimate justification to initiate contact with Bibbs, more likely that not, the contact would be initiated through Unit Officer Boyer. In this case, however, West was assigned to CB housing unit and Lasco was off-duty, leading a person of

reasonable intelligence to infer West and Lasco acted with a sufficiently culpable state of mind. If this matter proceeds to trial, Bibbs will request the court order a neurologist be appointed to conduct an examination of the defendant(s) state of mind at the time of the alleged incident and submit deposition evidence in support of the subjective culpability requirement.

B.    COUNT TWO - SUPERVISORY LIABILITY

It is well established federal law that "[a] supervisory official is liable so long as there exists either: (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient casual connection between the supervisor's wrongful conduct and the constitutional violation." Rodriguez v. County of Los Angeles, 891 F.3d 776, 798 (9th Cir. 2018) (quoting Keates v. Koile, 883 F.3d 1228, 1242-1243 (9th Cir. 2018)). The casual connection is established "by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should know would cause others to inflict a constitutional harm or injury." Starr v. Baca, 652 F.3d 1202, 1207-1208 (9th Cir. 2011). Therefore "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Starr, 652 F.3d at 1208 (9th Cir. 2011), (quoting Watkins v. City of Oakland, 145 F.3d 1087, 1092 (9th Cir. 1998)). "A supervisor is liable for a subordinates constitutional violations if the supervisor participated in or directed the violations, or new of he violations and failed to act or react to prevent the violations." Maxwell v. County of San Diego, 708 F.3d 1075, 1086 (9th Cir. 2013), (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1998)).

Regardless of whether an officer is a supervisor, a officer's duty to intercede when their fellow officer's violate the constitutional rights of a suspect or citizen in an inherent occupational obligation." United States v. Koon, 34 F.3d 1416, 1447 (9th Cir. 1994), reversed on other grounds, 518 US 81, 116 S.Ct. 2035 (1996). "[O]fficers can be held liable for failing to intercede," if it is evident, the officer could foreseeably prevent or intercede any constitutional deprivation. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000), see also Atencio v. Arpaio, 674 F.App. 623 (9th Cir. 2016), (a supervisor who witnesses an individual detainee being kicked by a fellow officer was not liable where evidence failed to show the supervisor actively participated in the excessive force, knew it would occur or "had a realistic opportunity to stop" the officers show of force. Adkins v. County of San Diego, 384 F.Supp.3d 1195 (S.D. Cal. 2019), (finding no liability for an officer who "had no realistic opportunity to intervene given the alleged violation occurred within a matter of seconds...).

In the instant, it is well established that a plaintiff can hold supervisors individually liable when culpable action, or inaction is directly attributed or there is a sufficiently casual connection between the supervisor's conduct and the

constitutional violation. Redman v. City of San Diego, 942 F.2d 1435, 1449 (9th Cir. 1991). In Redman, the plaintiff alleged the facility in which he was confined was overcrowded and the Sheriff knew the facility was inadequate facility to detain additional inmates due to the risk of harm, but housed Redman in the overcrowded facility regardless. Bibbs, like the Redman case argues that West and Lasco are known as "ass kickers" at FBOP McKean where an overwhelming number of complaints are filed against the two for unprovoked excessive force incidents resulting in serious physical injury. Bibbs further argues that under the Doctrine of Supervisory Liability, Defendant Peters is liable for West and Lasco's excessive force violations where she knowingly failed to sanction the officers despite the overwhelming number of corroborating complaints from other inmates. Cleary, Peter's cannot reasonably deny knowing about the documented incidents of excessive force, nor can she deny knowing that West and Lasco's conduct was the consequent and proximate cause of injury.

C.    COUNT THREE - FAILURE TO ADEQUATELY TRAIN

To succeed on a failure to train theory, a plaintiff must show the official was "deliberately indifferent to the need to train subordinates, and the lack of adequate training actually caused the constitutional harm or deprivation of rights." Flores v. County of Los Angeles, 758 F.3d 1154, 1159 (9th Cir. 2014), citing Connick v. Thompson, 563 US 51, 59 (2011). "While deliberate indifference can be inferred from a single incident when "the constitutional consequences of failing to adequately train are patently obvious, an inadequate training policy itself cannot be inferred from a single incident." Hyde v. City of Wilcox, 23 F.4th 863, 875 (9th Cir. 2022).

In the instant, Bibbs argues that Peter's acted deliberately indifferent and with reckless disregard to the need for adequate training of FBOP employees throughout the system, particularly at FBOP McKean relative to West and Lasco, where an overwhelming number of unsanctioned excessive force violations were reported against the two officers, yet no corrective policy was implemented. Bibbs argues the lack of adequate training is the consequent and proximate cause of constitutional harm or deprivation of rights outlined in this complaint and Peter's is culpable for her professional oversight.

VI.    DEMAND

The Plaintiff seeks redress individually, severely, and jointly for the consequent and proximate injury charged in this complaint;

A.    COUNT ONE - EXCESSIVE FORCE,    $6,000,000.00 (Six Million Dollars and 00/100)

B.    COUNT TWO - SUPERVISORYLIABILITY,    $6,000,000.00 (Six Million Dollars and 00/100)

C.    LEGAL EXPENSES,    $200,000.00 (Two Hundred Thousand Dollars and 00/100)

Absent equitable relief in this matter, the likelihood the Defendant(s) will continue his injurious acts and behaviors is

more likely than not. It is further requested this incident be referred to the United States Attorney's Office for criminal prosecution under 18 U.S.C. 242, Deprivation of Rights Under Color of Law.

DATED this 10th day of August, 2023.

Plaintiff - Donte Bibbs

CERTIFICATE OF SERVCE

Foregoing copies served via United States Postal Service and electronically via the Clerk's CM/ECF system this 10th day of August 2023, to:

United States District Court
Clerk of the Court
333 Constitution Avenue, N. W., Room 1225
Washington, D. C. 20001

Ms. Collette Peters
Federal Bureau of Prisons' Director
320 First Street, N. W.
Washington, D. C. 20534
Email: collette.peters@bop.gov

B. West
320 First Street, N. W.
Washington, D. C. 20534

R. Lasco
320 First Street, N. W.
Washington, D. C. 20534

Plaintiff - Donte Bibbs