IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE

DONTE BIBBS,

    Plaintiff

    vs.

DIRECTOR BOP COLLETTE
PETERS, B. WEST, R. LASCO,

    Defendants

)
)
)  1:25-CV-00115-RAL
)
)  RICHARD A. LANZILLO
)  Chief United States Magistrate Judge
)
)  MEMORANDUM OPINION ON
)  DEFENDANTS' MOTION TO DISMISS
)  OR, ALTERNATIVELY, FOR
)  SUMMARY JUDGMENT
)
)
)  RE: ECF NO. 22

MEMORANDUM OPINION

Pending before the Court is Defendants' motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or, alternatively, for summary judgment under Fed. R. Civ. P. 56 based on the affirmative defense of Plaintiff's failure to exhaust his administrative remedies. ECF No. 22. For the following reasons, Defendants' motion will be GRANTED to the extent it seeks dismissal under Rule 12(b)(6), rendering moot Defendants' alternative request for summary judgment.[1]

I.    Relevant Procedural History

Plaintiff Donte Bibbs ("Bibbs") commenced this pro se civil rights action in the United States District Court for the District of Columbia against Collette Peters, the former director of the Federal Bureau of Prisons ("BOP"), and two prison guards at

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge as authorized by 28 U.S.C. § 636.

the BOP's Correctional Institute at McKean County ("FCI-McKean"), Brandon West, and Patrick Lasko (collectively "Defendants").[2] *See* ECF Nos. 1 and 2. The case was transferred to this Court because Bibbs' cause of action arose in the Western District of Pennsylvania. ECF Nos. 13 and 14.

Defendants' principal argument for dismissal under Rule 12(b)(6) is that Bibbs' Complaint does not support a private right of action under *Bivens v. Six Unknown Named agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). As noted, Defendants alternatively request summary judgment based on Bibbs' failure to exhaust his administrative remedies. The motion is fully briefed and ready for disposition. *See* ECF No. 23 (Defendants' brief); ECF No. 24 (Defendants' concise statement of material facts); ECF No. 43 (Bibbs' brief in opposition); ECF No. 44 (Bibbs' supplemental brief); ECF No. 45 (Bibbs' responsive concise statement of material facts).

II.    Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations of the complaint and view them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir.

---

[2] Bibbs was an inmate at FCI-McKean during the events relevant to this action. He is currently incarcerated at the Collins Correctional Facility, a state-operated prison in Collins, New York. Bibbs' Complaint identifies Defendant Lasko as "R. Lasco." Defendants have indicated that this Defendant is correctly identified as "Patrick Lasko." The Court will use the name and spelling provided by the Defendants.

2002).  In deciding the motion, the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-36 (3d ed. 2004)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

While a complaint does not need detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions.  *See Twombly*, 550 U.S. at 555.  A "formulaic recitation of the elements of a cause of action will not do."  *Id.*  (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint.  *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the court accept legal conclusions disguised as factual allegations.  *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Finally, because Bibbs is proceeding *pro se*, his complaint will be held to "less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*,

404 U.S. 519, 520-521 (1972). If the court can reasonably read his pro se pleading to state a claim upon which relief can be granted, it will do so despite his confusion of legal theories. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969).

III.    Material Facts and Claims

For the purposes of Defendants' motion to dismiss only, the Court accepts as true the following factual allegations of the Complaint. On April 23, 2022, Bibbs was in his cell reading when Defendants West and Lasko opened his cell door and "engaged in an exchange of words attempting to provoke an incident of hostility." ECF No. 1 at 2.[3] Lasko and West told Bibbs that he looked like "Gumbo Shrimp," apparently a reference to a character from Forrest Gump. After Bibbs expressed optimism that he would be going home soon, Lasko responded, "not if I can help it." *Id.* West and Lasko then asked Bibbs about his COVID-19 vaccination status and told him that the nurse needed a nasal swab. Bibbs responded that he was current and properly vaccinated. West and Lasko and Bibbs then exchanged insults—the guards calling Bibbs "retarded" and responding that West and Lasko were "incest babies." *Id.* This exchange prompted West to enter the cell and physically attack Bibbs by placing Bibbs in a "choke hold maneuver" and striking him "at least five times" in the head and face with a closed fist. These blows caused Bibbs to become

---

[3] Bibbs' Complaint is not formatted in separate numbered paragraphs. The relevant factual allegations are set out at pages 2-3 of Bibbs' Complaint (ECF No. 1). Citations to the pleading are omitted except for quoted allegations.

disoriented and lose consciousness. *Id.* Once Bibbs was disabled, West deployed pepper spray, exited the cell, and locked Bibbs inside.

West filed an incident report in which he claimed that Bibbs refused an order and physically assaulted West. Bibbs was transported to the BOP-McKean Special Housing Unit ("SHU") pending an investigation. After a Disciplinary Officer investigated and reviewed the video surveillance, however, it was determined that Bibbs did not cause the incident; the disciplinary action against him was expunged and no disciplinary sanction was imposed. West has either been separated from the BOP or reassigned to another unit due to the number and severity of inmate excessive force complaints filed against him. Lasko is still assigned to the BOP-McKean unit.

Bibbs was scheduled for release on April 28, 2022, but due to the incident on April 23, 2022, his release was delayed until May 31, 2022. Bibbs complains of suffering permanent paralysis, blurred vision, and ringing in his ears because of West's assault. Upon his release, Bibbs was seen by a family physician who noted paralysis and impaired motor skills caused by frontal lobe and cerebral cortex brain injury with severe hematoma sustained in the assault.

Defendant Peters was aware of the officers' reputations as "ass kickers" due to the number of corroborating complaints filed against them by other inmates. *Id.* at 8. Despite this knowledge, she failed to sanction them or ensure that they were adequately trained. Bibbs alleges that Peters' failure to train and discipline the officers caused West's assault and Bibbs' resulting injuries.

Bibbs asserts an Eighth Amendment excessive force claim against West and Lasko, and supervisory liability and failure-to-train claims against Peters. The Court would normally address Defendants' exhaustion defense before evaluating any merits-based arguments because exhaustion of administrative remedies under the Prison Litigation Reform Act is a threshold requirement for an inmate's filing of an action challenging prison conditions. *See Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018). However, the Court may defer consideration of exhaustion where it involves issues of fact and doing so promotes efficiency and preserves judicial resources. *See Woodford v. Ngo*, 548 U.S. 81, 101 (2006) (holding that because "the PLRA exhaustion requirement is not jurisdictional," a district court may "dismiss plainly meritless claims without first addressing what may be a much more complex question, namely, whether the prisoner did in fact properly exhaust available administrative remedies"); *Perttu v. Richards*, 605 U.S. 460, 469 (2025) (same); *Harris v. Hyde*, 2015 WL 8992971, at *2 (W.D. Pa. Dec. 16, 2015) (deferring consideration of exhaustion defense). Because Bibbs plainly has no *Bivens* remedy for any of his claims, the interests of judicial efficiency favors dismissal of this case on that basis without reaching the factual issues underlying the exhaustion defense.

IV.    Discussion

A. No *Bivens* remedy is available for any claim asserted by Bibbs.

Defendants argue that Bibbs' Complaint must be dismissed because *Bivens* and its progeny do not recognize a private right of action for any of his claims, and

because relevant factors weigh against extending a *Bivens* remedy to these claims. Defendants are correct on both points.

By enacting 42 U.S.C. § 1983, Congress authorized a civil cause of action against state actors for violations of civil rights, but Congress has never enacted a comparable statutory authorization for civil rights actions against federal actors. *See Pauley on behalf of Asatru/Odinist Faith Cmty. v. Samuels*, 2019 WL 4600195, at *5 (W.D. Pa. Sept. 23, 2019) (citing *Karkalas v. Marks*, 2019 WL 3492232, *6 (E.D. Pa. July 31, 2019)). In *Bivens*, however, the United States Supreme Court recognized an implied right of action for damages against federal officials who have violated Fourth Amendment rights. 403 U.S. at 396. The Court found this right of action grounded in the Constitution itself rather than any express or implied statutory authorization to sue. *See id.* at 396-97.

Since *Bivens*, the Supreme Court has recognized this implied right of action in only two additional cases: first, in *Davis v. Passman*, 442 U.S. 228, 248 (1979), where it found a *Bivens* right of action available for a Fifth Amendment gender discrimination claim, and, again, in *Carlson v. Green*, 446 U.S. 14, 24 (1980), where the Court permitted a *Bivens* remedy against federal prison officials for failure to treat a prisoner's serious medical condition. The Supreme Court has declined to further extend *Bivens* since these decisions. Instead, the Court has expressly limited *Bivens* actions to contexts previously recognized. *See Corr. Srvs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (referring to *Bivens* as a "limited holding."). *See also Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017) (noting that "over the

course of nearly four decades, the Supreme Court has repeatedly refused to recognize *Bivens* actions in any new contexts").

In *Ziglar v. Abbasi*, the Supreme Court set forth a two-part test for determining whether a prospective *Bivens* claim may proceed. First, the court must ascertain whether the case presents a "new context." 582 U.S. 120, 138 (2017). If the case differs "in a meaningful way" from previous *Bivens* cases decided by the Supreme Court, "then the context is new." *Id.* at 139. Second, if the case presents a new context, the court must then consider whether "special factors" counsel against extending the *Bivens* remedy; this inquiry asks whether "the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* If a court concludes that "even a single reason" exists to pause "before applying *Bivens* in a new context or to a new class of defendants," then special factors counseling hesitation exist, and a *Bivens* remedy does not lie. *Egbert v. Boule*, 596 U.S. 482, 491-492 (2022) (quoting *Hernández v. Mesa*, 589 U. S. 93 (2020) (internal quotation marks omitted). "[I]n all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Egbert v. Boule*, 596 U.S. 482, 486 (2022). If there is "any rational reason (even one) to think that Congress is better suited" to determine the propriety of a cause of action, then a *Bivens* action cannot proceed. *Id.* at 494-95.

Here, this Court need not engage in a detailed analysis regarding whether an inmate's claim of excessive force against a federal correctional officer and supervisory officials constitutes a new *Bivens* context and, if it does, whether special factors

counsel for or against extending the *Bivens* remedy. Such analysis is unnecessary because the Supreme Court answered both questions definitively in *Goldey v. Fields*, 606 U.S. 942 (2025) (per curium). In *Goldey*, a federal prisoner sued the federal BOP, a prison warden, and several prison officials in federal court for damages, claiming that certain prison guards used excessive force against him in violation of the Eighth Amendment. *Id.* at 943. The district court dismissed the plaintiff's complaint, but a divided panel of the Fourth Circuit reversed in relevant part. *Id.* The Supreme Court reversed the decision of the Court of Appeals. In doing so, the Court squarely rejected a *Bivens* remedy for excessive force claims at each step of the analysis:

> This case arises in a new context, and "special factors" counsel against recognizing an implied *Bivens* cause of action for Eighth Amendment excessive-force violations. To begin with, Congress has actively legislated in the area of prisoner litigation but has not enacted a statutory cause of action for money damages. *See Ziglar*, 582 U.S., at 148–149, 137 S.Ct. 1843. In addition, extending *Bivens* to allow an Eighth Amendment claim for excessive force could have negative systemic consequences for prison officials and the "inordinately difficult undertaking" of running a prison. *Turner v. Safley*, 482 U.S. 78, 84–85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Moreover, "an alternative remedial structure" already exists for aggrieved federal prisoners. *Ziglar*, 582 U.S., at 137, 137 S.Ct. 1843; *see Correctional Services Corp. v. Malesko*, 534 U.S. 61, 74, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001). The existence of such alternative remedial procedures counsels against allowing *Bivens* suits even if such "procedures are 'not as effective as an individual damages remedy.'" *Egbert*, 596 U.S., at 498, 142 S.Ct. 1793.

*Id.* at 944–45.

9

The same considerations described in *Goldey* foreclose recognition of a *Bivens* remedy for Bibbs' failure-to-train and supervisory liability claims.[4] These claims arise in the same context as the underlying claim of excessive force that the Supreme Court rejected for a *Bivens* remedy. Failure-to-train and supervisory liability theories of liability simply extend liability for the underlying misconduct—here, excessive force—to supervisory officials based on deliberate indifference. Such theories are also inappropriate for a *Bivens* remedy. *See also Dongarra v. Smith*, 27 F.4th 174, 180–81 (3d Cir. 2022) (observing that creating "a *Bivens* remedy [for deliberate indifference claims] would require [the court] to make rules on when a prison official who is deliberately indifferent to one risk may be held liable for harms that result from a foreseeable yet distinct secondary risk"). Furthermore, recognition of a *Bivens* remedy for such claims would engender the same negative systemic consequences for prison officials as those the Supreme Court associated with a *Bivens* remedy for excessive force claims. And the same alternative remedial procedures that exist to address uses of excessive force exist to address supervisory neglect and training deficiencies. Bibbs had access to the BOP's grievance process to "seek formal review" of the officers' conduct and remedy any consequences of any training or supervisory deficiencies. *See Corr. Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001). This process is well-suited to address alleged wrongful conduct such as that committed by West and Lasko; it also appears to have been effective in this case as West was either

---

[4] To the extent *Bistrian v. Levi*, 912 F.3d 79, 94 (3d Cir. 2018) can be interpreted as reaching a contrary holding, it has been abrogated by the Supreme Court's decisions in *Egbert* and *Goldey*.

reassigned or separated from the BOP, and the misconduct charge against Bibbs was expunged from his record.

Because Bibbs has no private right of action under *Bivens*, his Complaint will be dismissed with prejudice, and the Court need not reach the Defendants' additional arguments for dismissal or their alternative request for summary judgment based on the exhaustion of administrative remedies defense.

For the foregoing reasons, the Court will grant Defendants' motion to dismiss Bibbs' Complaint for failure to state a claim and deny their alternative request for summary judgment as moot.

An Order will issue separately.

DATED this 26th day of March 2026.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE